IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRENDA K. SHANABARGER<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Civ. No. 16-00567 JMS-KJM<br><br>ORDER REMANDING THE CASE FOR FURTHER PROCEEDINGS |

# ORDER REMANDING THE CASE FOR FURTHER PROCEEDINGS

## I. INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Commissioner" or "Defendant"). Brenda K. Shanabarger ("Plaintiff") appeals Defendant's adoption of the Administrative Law Judge's ("ALJ") July 9, 2015 decision finding Plaintiff not disabled under the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f ("July 9 Decision"). Plaintiff argues that the July 9 Decision must be overturned because the ALJ erroneously identified (and subsequently rejected) *examining* physician opinions as *non-examining* physician opinions. Based on the following, the court REMANDS the case for further proceedings.

1

## II. BACKGROUND

### A. Factual Background

On November 15, 2012, Plaintiff filed an application for disability insurance benefits, alleging disability since December 6, 2007. Admin. R. ("AR") 153-59, ECF No. 13. Plaintiff later amended the alleged onset date of her disability to November 24, 2011. *Id.* at 20. Her claim was denied twice -- once on July 19, 2013, and again upon reconsideration on May 1, 2014. *Id.* at 95-98, 102-04. On May 23, 2014, Plaintiff filed a request for a hearing. *Id.* at 105. ALJ Nancy Lisewski conducted the hearing on June 11, 2015, at which Plaintiff testified. *Id.* at 20.

In the July 9 Decision, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease with mild disc protrusion at L2-3, back pain, and radiculopathy." *Id.* at 22. But the ALJ ultimately found that Plaintiff had "the residual functional capacity to perform light work" and "was capable of performing her past relevant work as a Housekeeper cleaner/Night auditor." *Id.* at 25, 27. Consequently, she determined that Plaintiff "was 'not disabled' under sections 216(i) and 223(d) of the Social Security Act through March 31, 2013, the last date insured." *Id.* at 28.

Plaintiff does not dispute the severe impairments found in the July 9 Decision. She only contests the subsequent residual functional capacity ("RFC") finding that her limitations (resulting from those severe impairments) were not extensive enough to qualify her for disability insurance benefits. Thus, the court first focuses on the evidence relevant to the RFC finding, and then turns to the RFC finding itself.

1. *The Evidence Before the ALJ*

    a. *Examining Physicians Lee & Taylor*

On October 20, 2012, Dr. Mark Lee ("Dr. Lee") conducted a physical examination of Plaintiff for the State of Hawaii Department of Human Services ("Hawaii DHS"). *Id.* at 394. Under "ESTIMATED FUNCTIONAL LIMITATIONS," Dr. Lee checked boxes to indicate that Plaintiff: (1) can occasionally lift/carry less than ten pounds; (2) cannot lift/carry frequently; (3) can stand/walk for less than two hours with an assistive device; and (4) can sit continuously with breaks every two hours for less than six hours. *Id.* at 397. As a result, Dr. Lee concluded that Plaintiff "is unable to participate in any activities, except treatment or rehabilitation." *Id.*

On February 6, 2013, Dr. Christopher Taylor ("Dr. Taylor") conducted another physical examination of Plaintiff for Hawaii DHS. *Id.* at 388.

Dr. Taylor's findings were identical to Dr. Lee's, with one exception: Dr. Taylor found that Plaintiff could occasionally lift/carry *exactly* ten pounds, whereas Dr. Lee found that Plaintiff could occasionally lift/carry *less than* ten pounds. *Compare id.* at 397 *with id.* at 391.

  b.  Other Medical Evidence

  On October 31, 2012, Plaintiff visited the Kalihi-Palama Health Center for a mammogram follow-up. *Id.* at 440-43. As part of the visit's physical examination, Malia A. Ribeiro APRN observed, "Gait and Station: walking w/ cane foot drop on right." *Id.* at 442.

  On December 25, 2012, Plaintiff was admitted to Queen's Medical Center for "weakness" resulting from someone falling on her the previous week, which caused her to fall and land on her hands and knees. *Id.* at 347-48. Dr. Erica M. Garcia ("Dr. Garcia") was her attending provider. *Id.* at 347. Dr. Garcia's notes state: "Coordination and gait normal. . . . Patient is able to stand on tip-toes and heels, but complains of left leg pain, that is chronic, while doing this. Perineal sensation intact. No apparent facial droop, moving ext symmetrically." *Id.* at 350. She was discharged that same day. *Id.* at 347.

  On March 21, 2013, Plaintiff visited with Dr. James W. Pearce ("Dr. Pearce") for "followup of lumbar radiculopathy." *Id.* at 331. Under "Progress

Notes," Dr. Pearce wrote: "There is no motor asymmetry and no pronator drift. Ankle jerk appears to be absent on the right but present on the left as was present elsewhere one to 2+[.]" *Id.* at 332. Because "her imaging show[ed] apparently nothing that would lend itself to surgical repair," Dr. Pearce "refer[red] her to physiatry for assistance in controlling her back and leg pain." *Id.*

    c. *Non-Examining Physicians Fujikami & Shibuya*

On July 18, 2013, Dr. N. Shibuya ("Dr. Shibuya") conducted an RFC assessment by reviewing Plaintiff's medical records, primarily relying on the evidence discussed above. *Id.* at 76-79. Dr. Shibuya concluded that Plaintiff had a "light" RFC, specifically finding that Plaintiff could: (1) occasionally lift/carry 20 pounds; (2) frequently lift/carry 10 pounds; (3) stand/walk for 6 hours in an 8-hour workday; and (4) sit for 6 hours in an 8-hour workday. *Id.* at 76-77. On April 29, 2014, Dr. R. Fujikami ("Dr. Fujikami") conducted another RFC assessment, reviewing the same records, and came to the same conclusion as Dr. Shibuya. *Id.* at 88-92.

  2. ***The ALJ's RFC Finding***

In the July 9 Decision, the ALJ weighed the medical evidence and made the following findings:

> State of Hawai'i Department of Human Services reviewing physicians (including but not limited to Mark Lee, M.D., Bryan

5

Yamashiro, M.D., and Christopher Taylor, M.D.) stated in 2013 that the claimant should be limited to less-than-sedentary work (*e.g.*, she cannot lift and/or carry frequently, she cannot stand and/or walk more than 2 hours in an 8-hour workday, and she needs a cane) and would be disabled (Exhibit B3F). I give little weight to these medical source statements, however, because they were prepared for State of Hawai'i general assistance purposes and not Social Security Administration disability, and they are not consistent with the medical evidence prior to the March 31, 2013 date last insured.

Progress notes indicated that, prior to the March 31, 2013 date last insured, the claimant walked with a cane and had foot drop on the right, and her gait was slow (*e.g.*, Exhibits B4F/4; B6F/28, 131). Physical examinations showed normal gait and coordination, however, she was able to stand on tiptoes and heels, perineal sensation was intact, there was no pronator drift, and her extremities moved symmetrically (*e.g.*, Exhibits B2A; B4A; B1F; B2F). There is little medical evidence from the November 24, 2011 amended alleged onset date of disability through the date last insured.
. . . .
State Agency medical consultants R. Fujikami, M.D. and N. Shibuya, M.D., concluded that the claimant could perform light work with occasional postural limitations (Exhibits B2A; B4A), as adopted above. I include a limitation against exposure to vibration to reduce the claimant's pain (as also adopted in the prior final and binding September 2011 unfavorable decision), but other than that, I give great weight to the medical source statements of Dr. Fujikami and Dr. Shibuya, because they are not contradicted by the aforementioned medical evidence prior to the date last insured of March 31, 2013.

In sum, I find the objective medical evidence and the subjective evidence support the residual functional capacity adopted above.

*Id.* at 26-27.

B.  **Procedural Background**

On July 9, 2015, the ALJ issued her decision finding Plaintiff not disabled. *Id.* at 20-28. The Appeals Council subsequently rejected Plaintiff's request to review the July 9 Decision, and the July 9 Decision became the final decision of the Commissioner on September 1, 2016. *Id.* at 1-3.

On October 19, 2016, Plaintiff filed her Complaint seeking judicial review of the July 9 Decision. Compl., ECF No. 1. On April 17, 2017, Plaintiff filed her Opening Brief, and on June 6, 2017, Defendant filed its Answering Brief. Pl.'s Opening Br., ECF No. 15; Def.'s Answering Br., ECF No. 16. Plaintiff filed her Reply Brief on June 20, 2017. Pl.'s Reply Br., ECF No. 17.

A hearing was held on August 14, 2017.

### III.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing findings of fact with respect to such determinations, the court must uphold the Commissioner's decision, made through an ALJ, "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) (quotation marks omitted). With that said, however, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Ryan*, 528 F.3d at 1198 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## IV. **DISCUSSION**

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *Id.* § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential analysis to assess disability claims, which asks:

(1) Is the claimant presently working in a substantially gainful activity? If yes, the claimant is "not disabled."
(2) Is the claimant's impairment severe? If no, the claimant is "not disabled."
(3) Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If yes, the claimant is "disabled."
(4) Is the claimant able to do any work that he or she has done in the past? If yes, the claimant is "not disabled."
(5) Is the claimant able to do any other work? If yes, the claimant is "not disabled."

*See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.* at 1098. If the claimant reaches step five, the burden shifts to the Commissioner. *Id.*

The ALJ's July 9 Decision found that Plaintiff: (1) was not engaged in a substantial gainful activity; (2) had three severe impairments: degenerative disc disease with mild disc protrusion at L2-3, back pain, and radiculopathy; (3) did not have an impairment meeting one of the list of specific impairments described in the regulations; but (4) had the RFC to perform light work and thus was able to

perform past relevant work as a "Housekeeper cleaner/Night auditor." AR at 22-27. Thus, Plaintiff survived steps one through three, but failed at step four.

Plaintiff now argues that the ALJ erroneously identified (and subsequently rejected) *examining* physician opinions as *non-examining* (also known as *reviewing*) physician opinions. Pl.'s Opening Br. at 7-15. The court agrees.

**A.     Legal Standard**

   *1.     Weighing Types of Medical Opinions*

Generally, "[t]here are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). When assessing medical opinions, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

In cases "[w]here a treating or examining physician's opinion is contradicted by another doctor, the 'Commissioner must determine credibility and resolve the conflict.'" *Valentine*, 574 F.3d at 692 (quoting *Thomas v. Barnhart*,

278 F.3d 947, 956-57 (9th Cir. 2002)). When rejecting "a treating or examining doctor's opinion [that] is contradicted by another doctor's opinion," an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216; *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

When resolving this conflict, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). A contrary opinion can, however, "constitute substantial evidence when it is consistent with other independent evidence in the record." *Id.*; *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

### 2. *Harmless Error*

"Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104,

11

1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In making this assessment, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.* And "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). This rule reflects how "[the Ninth Circuit's] precedents have been cautious about when harmless error should be found." *Id.*

**B.     Application**

The ALJ misidentified Dr. Lee and Dr. Taylor as "reviewing physicians," AR 26, rather than examining physicians.[1] This constitutes error, and the court cannot confidently conclude that it was "inconsequential to the ultimate nondisability determination," *Carmickle*, 533 F.3d at 1162.

The Ninth Circuit has created a hierarchy for weighing medical opinions, where "the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. Because of this, ALJs must give more deference to an examining physician's opinion than a reviewing physician's opinion. *See Tonapetyan*, 242 F.3d at 1149

---

[1] Defendant admits that Dr. Lee and Dr. Taylor were examining physicians, rather than reviewing physicians. Def.'s Answering Br. at 7. In any event, the record clearly shows that Dr. Lee and Dr. Taylor physically examined Plaintiff. AR 388-99.

12

("[T]he contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion.").

By misidentifying Dr. Lee and Dr. Taylor as reviewing physicians, the ALJ did not afford their opinions sufficient weight relative to the opinions of Dr. Fujikami and Dr. Shibuya. And in failing to recognize that Dr. Lee and Dr. Taylor physically examined Plaintiff, the ALJ ignored medical evidence, a mistake that further compromised the ALJ's subsequent findings.

First, the ALJ found that the opinions of Dr. Lee and Dr. Taylor were "not consistent with the medical evidence prior to the March 31, 2013 date last insured." AR 26. Second, the ALJ stated that "[t]here is little medical evidence from the November 24, 2011 amended alleged onset date of disability through the date last insured." AR 26. And third, the ALJ gave "great weight to the medical source statements of Dr. Fujikami and Dr. Shibuya, because they are not contradicted by the aforementioned medical evidence prior to the date last insured of March 31, 2013." AR 27.

All three of these findings were only possible because the ALJ failed to recognize that Dr. Lee and Dr. Taylor were examining physicians. Because Dr. Lee and Dr. Taylor physically examined Plaintiff -- rather than just reviewed her

13

medical records -- their examinations *are* medical evidence. And they also fall within the relevant time period, as they physically examined Plaintiff on October 20, 2012, and February 8, 2013, respectively. AR 388, 394. Thus, the medical source statements of Dr. Fujikami and Dr. Shibuya were contradicted by at least *some* medical evidence prior to the date last insured of March 31, 2013.

To affirm, the court must be able to find that the ALJ's error is harmless, or "inconsequential to the ultimate disability determination." *Carmickle*, 533 F.3d at 1162. And where -- as here -- "the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173.

Because this error is so fundamental, and because it compromises so much of the ALJ's July 9 Decision, the court cannot confidently conclude that the ALJ's error is harmless.[2] Remand is therefore appropriate to allow the ALJ to appropriately weigh the relative evidence in the first instance. [3]

---

[2] The Tenth Circuit encountered a similar error, where the ALJ mistakenly identified a treating physician as an examining physician. *Winick v. Colvin*, 674 F. App'x 816, 820 (10th Cir. 2017). The court found that such an error could not be harmless:

> The Commissioner argues that the ALJ's error was harmless because the ALJ provided reasons for discounting Dr. Ganzell's opinion that would have applied even if he had analyzed the opinion as a treating source opinion. But we cannot treat this error as harmless. To do so would ignore the ALJ's duties not only to determine whether to assign a treating physician's opinion controlling weight, but to give deference to a treating

(continued . . .)

14

# V.  **CONCLUSION**

For the reasons set forth above, the court REMANDS the case for further proceedings on an open record.  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 31, 2017.



  /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Shanabarger v. Berryhill*, Civ. No. 16-00567 JMS-KJM, Order Remanding the Case for Further Proceedings

---

(. . . continued.)
> physician's opinion even if he does not assign it controlling weight.  The exercise of such deference might have changed the relative weight assigned to all the medical opinions, including the non-examining consultants to whose opinions the ALJ assigned great weight.

*Id.* (internal citations omitted); *see also Johnson v. Colvin*, 2016 WL 3922025, at *4 (W.D.N.Y. July 21, 2016) ("I disagree with the government's assertion that the record in this case permits the Court to divine how the ALJ would have weighed [the doctor]'s opinion had he appreciated [the doctor]'s established relationship with [the plaintiff].").

[3] Plaintiff also argues that the ALJ erroneously rejected Plaintiff's testimony as not credible.  Pl.'s Opening Br. at 15-21.  Because the court finds that the ALJ erred in identifying Dr. Lee and Dr. Taylor as non-examining physicians, rather than examining physicians, the court does not reach this argument.  Because the remand is an open remand, however, the ALJ should reconsider or reweigh evidence as appropriate, including evidence as to Plaintiff's credibility.